```
         UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF WEST VIRGINIA

                    PARKERSBURG
```

**KIRT R. KING,**

    **Movant,**

**v.**                                              **Case No. 6:08-cv-01260**
                                                      **Case No. 6:04-cr-00127-4**

**UNITED STATES OF AMERICA,**

    **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATION

On November 3, 2008, Movant, Kirt R. King (hereinafter "Defendant") filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (docket # 595), which was not signed. By Order entered August 3, 2009, the court directed Defendant to submit a signed version, which he did on August 17, 2009 (# 635).

The United States filed a response in opposition (# 602). Defendant's reply (# 604), was not signed, but he subsequently filed a signed version (# 636). On June 29, 2009 and August 17, 2009, Defendant submitted "supplemental authority" in support of his motion (## 631, 637).

Defendant and two of his three co-defendants were convicted by a jury of various offenses relating to the distribution of cocaine. Defendant was convicted of engaging in a conspiracy to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 846

(Count One), distribution of 3.5 grams of cocaine (Count Eight), possession with intent to distribute 116.5 grams of cocaine (Count Fourteen), possession of firearms in furtherance of drug trafficking (Count Fifteen), and conspiracy to commit money laundering (Count Sixteen). (Superseding indictment, # 105; jury verdict, # 243). He is serving a sentence of 240 months, to be followed by a five year term of supervised release (Judgment Order entered July 5, 2005, # 415).

Defendant's direct appeal was unsuccessful. United States v. King, No. 05-4672, 239 Fed. Appx. 852 (4th Cir. Sept. 10, 2007).

### Facts of the Case

The Fourth Circuit's decision affirming Defendant's convictions and sentence does not describe the facts with particularity. Quoted below is an excerpt from the Fourth Circuit's decision affirming the convictions and sentences of Nathan Hughes and Lois King, who were tried jointly with Defendant:

> The charges arose in 2001 when the Drug Enforcement Administration and the Parkersburg Narcotics Violent Crimes Task Force ("Task Force") began an undercover investigation into cocaine trafficking in Wood County, West Virginia, targeting various individuals in the Parkersburg area including Appellant Hughes, as well as Kirt King and others. [Footnote: The Government introduced evidence at trial that Kirt King and Mario Mason joined forces to purchase cocaine from Columbus, Ohio, process it, and then resell it in the Parkersburg, West Virginia area. Testimony as to the amounts of cocaine purchased, processed, and redistributed by the conspiracy members was introduced by a number of witnesses.] * * *

United States v. Hughes, No. 05-4499, 199 Fed. Appx. 250, 251 (4th

Cir. July 20, 2006).

**Grounds for Relief**

Defendant's § 2255 motion sets forth the following grounds for relief:

> Ground one: Counsel was ineffective for failing to inform Movant of [the] result of his appeal to the Court of Appeals and his right to petition the Supreme Court for [a writ of] certiorari. King's counsel filed a brief pursuant to Anders. However, counsel failed to follow the Court of Appeals order to inform King of the affirmance of his conviction in order for King to have a second review of his issue to the Supreme Court. Counsel['s] failure cause[d] King to miss his time frame to file a [petition for a writ of] certiorari.
>
> Ground two: The district court erred in denying Movant's "actual innocen[ce]" claim under the money laundering statute, 18 U.S.C. § 1956(a)(1)(B)(i) and (ii). Prior to trial, King asserted to the court that he was not guilty of money laundering, therefor the court would not accept his plea. The central issue in dispute is the fact that to convict under § 1956(a)(1)(B)(i), the government must prove King "designed to conceal and disguise" otherwise as many circuits held, "the government view would turn the money laundering statute into [a] money spending statute."

(# 595, at 3.)

**Analysis**

Ground one - Ineffective assistance of counsel

In his affidavit submitted in support of his first ground for relief, Defendant asserts that his attorney abandoned him after filing an Anders brief.[1] (Affidavit, # 595, at 6-7.) He contends

---

[1] Anders v. California, 386 U.S. 738 (1967).

that the failure to notify him of the Fourth Circuit's decision in his appeal deprived Defendant of the opportunity to petition the Supreme Court of the United States for further review, while the Supreme Court had Rita v. United States, 551 U.S. 338 (2007) and Claiborne v. United States, 549 U.S. 1016 (2006), under consideration. (The Claiborne case became moot when Claiborne died; the same issue was addressed in Gall v. United States, 552 U.S. 38 (2007).)

The response of the United States attaches a copy of a letter dated September 12, 2007, from Dennis H. Curry, Defendant's appellate counsel, to Defendant, enclosing copies of the Fourth Circuit's decision and judgment (# 602-2, at 1). In the letter, Mr. Curry advised Defendant of his right to petition for rehearing and rehearing en banc, and to petition the Supreme Court:

> This ruling by the Fourth Circuit Court of Appeals exhausts your appeal remedy *as a practical matter* because I cannot conceive of a viable ground for either a Petition for Rehearing or Petition for Rehearing en Banc (any more than I thought there were viable grounds for appeal in the first instance). Of course, you may feel differently and desire to file such petition(s). * * * If so, please advise me.
>
> You also have a right to file a Petition for a Writ of Certiorari to the United States Supreme Court. The Supreme Court strictly enforces a filing deadline of ninety (90) days from the date of the Fourth Circuit decision. The deadline for filing in your case is December 11, 2007.
>
> *If you want my help in filing anything, please advise in writing.* I advise you of mere possibilities. I do not think that there are grounds.

<u>Id.</u> [Emphasis in the original.]

     The Fourth Circuit's docket sheet reflects that a petition for rehearing and for rehearing en banc was filed on September 27, 2007, and denied on October 23, 2007.  The docket entry states that copies were sent "to all parties."  The mandate issued October 31, 2007.  The undersigned cannot determine from the docket sheet whether Defendant or Mr. Curry filed the petition for rehearing.  A subsequent letter to the Clerk of the Fourth Circuit from Defendant, dated June 1, 2008, suggests that Defendant filed the petition *pro se*.  He wrote that "I filed for rehearing en banc," and refers to "my request for rehearing."  In response to the letter, a deputy clerk wrote, "[m]ore than likely the order was sent to your attorney Dennis Curry as he was still listed as counsel of record on this case."  A letter from Dennis Curry to Defendant, dated June 9, 2008, establishes that Defendant filed the petition for rehearing *pro se*.  (# 602-2, at 3.)  It is possible that the Clerk of the Fourth Circuit sent the order denying rehearing to Mr. Curry and not to Defendant.  Given the Defendant filed the petition for rehearing *pro se*, it was not Mr. Curry's responsibility to send the order to Defendant.

     In an unpublished opinion, the Fourth Circuit has ruled that it is a violation of a defendant's rights under the Fourth Circuit's CJA Plan if the defendant requests that a petition for

certiorari be filed and the CJA-appointed attorney fails to do so. United States v. Smith, No. 07-6358, 2008 WL 4951657 *3 (4th Cir. Nov. 19, 2008) (copy attached). The remedy is for a defendant to file a motion with the Fourth Circuit that it recall its mandate in the direct appeal, appoint counsel, vacate and re-enter its judgment, thus re-starting the 90-day period for filing a petition for a writ of certiorari. It is not within the power of this court to re-start the 90-day period. There is no evidence that Defendant requested Mr. Curry to file a petition for a writ of certiorari.

The undersigned proposes that the presiding District Judge **FIND** that Defendant was not denied effective assistance of counsel with respect to the filing of a petition for a writ of certiorari.

Ground two - Actual innocence

In the memorandum attached to his § 2255 motion, Defendant argues that he is actually innocent of the crime of engaging in a conspiracy to launder drug proceeds. (# 595, at 14.) He asserts that two issues are raised: (1) whether "proceeds" refers to the gross income from Defendant's drug trafficking or only the net income; and (2) whether Defendant knew that his mother, Lois King, was conducting a transaction "designed to conceal or disguise" the nature, location, source, ownership, or control of the "proceeds" of specified unlawful activity. Id.

Defendant particularly relies on the Supreme Court's plurality ruling in United States v. Santos, ___ U.S. ___, 128 S. Ct. 2020

(2008), that "proceeds" means "profits." In that case, which involved the operation of an illegal lottery, the prosecution proved that Santos operated the lottery and paid runners (who kept a portion of the bets as commissions), winners, and collectors (who delivered money to Santos and received a salary from Santos). The Court affirmed the granting of a § 2255 motion which vacated the defendants' convictions for money laundering, and ruled narrowly as follows:

> The "proceeds of specified unlawful activity" are the proceeds from the conduct sufficient to prove *one* predicate offense. Thus, to establish the proceeds element under the "profits" interpretation, the prosecution needs to show only that a single instance of specified unlawful activity was profitable and gave rise to the money involved in a charged transaction. And the Government, of course, can select the instances for which the profitability is clearest. * * * [T]he factfinder will not need to consider gains, expenses, and losses attributable to other instances of specified unlawful activity, which go to the profitability of some entire criminal enterprise. What counts is whether the receipts from the charged unlawful act exceeded the costs fairly attributable to it.
>
> * * *
>
> As for the knowledge element of the money-laundering offense – knowledge that the transaction involves profits of unlawful activity – that will be provable (as knowledge must almost always be proved) by circumstantial evidence. For example, someone accepting receipts from what he know to be a long-continuing drug-dealing operation can be found to know that they include some profits. And a jury could infer from a long-running launderer-criminal relationship that the launderer knew he was hiding the criminal's profits. Moreover, the Government will be entitled to a willful blindness instruction if the professional money launderer, aware of a high probability that the laundered funds were profits, deliberately avoids learning the truth about them – as

> might be the case when he knows that the underlying crime is one that is rarely unprofitable.
>
> * * *
>
> The money-laundering charges brought against Santos were based on his payments to the lottery winners and his employees, and the money-laundering charge brought against Diaz was based on his receipt of payments as an employee. Neither type of transaction can fairly be characterized as involving the lottery's profits. Indeed, the Government did not try to prove, and respondents have not admitted, that they laundered criminal profits.

128 S. Ct. at 2029, 2031.

Basing his assertions on Santos, Defendant contends that the government had to prove that Defendant's drug conspiracy was profitable over the entire period (1995 to 2004). (# 595, at 19.) He further argues that he made no attempt to disguise or conceal any transaction, with real estate purchases being filed on the public record. Id., at 20. He concludes that he is actually innocent because of the lack of proof of profits, and asks that his money-laundering conviction be vacated, and that he be re-sentenced. Id., at 22.

The government responds that Defendant procedurally defaulted this claim by failing to raise it on direct appeal. (# 602, at 12-13.) With respect to the Santos decision, the United States wrote the following:

> Though Santos makes a distinction between criminal profits and criminal receipts, petitioner's filing does not explain with any clarity how this distinction makes him factually innocent of the money laundering crime. The relevant evidence which the jury weighed at trial to

8

>convict defendant was sufficient to convict him of money laundering. Clearly, defendant enjoyed the profits from his illegal drug activities throughout the duration of the conspiracy. The evidence defendant offers to suggest otherwise is without merit. Simply because defendant allegedly did not realize a profit from Mr. Henderson's [sic] drug sales for a period of time, in no way negates the facts presented at trial concerning the funds used by defendant and Lois King to conduct real estate transactions, in violation of 18 U.S.C. § 1956(a)(1)(B)(I).

Id., at 13-14.

In reply, Defendant states that "the factual basis for the money laundering conviction is that Mr. King used portion of the proceeds from the drugs to make mortgage payments and allegedly pay-off a building for his mother. Under any accounting system such a mortgage payment is a business expense, it is not part of the profits of the business." (# 604, at 6.) Defendant also asserts that "the Supreme Court did not hold that their decision applied 'only' to gambling cases." Id.

The Fourth Circuit has not published a case addressing Santos, but it has decided an unpublished case that limits Santos to gambling cases. In United States v. Howard, No. 07-4146, 309 Fed. App'x 760 (4th Cir. Jan. 29, 2009), *per curiam*, the court wrote as follows:

>A plurality of the Court in *United States v. Santos*, ___ U.S. ___, 128 S. Ct. 2020, 170 L. Ed.2d 912 (2008), held the term "proceeds" to mean "profits" and stated that "a criminal who enters into a transaction paying the expenses of his illegal activity cannot possibly violate the money-laundering statute, because by definition profits consist of what remains after expenses are paid." *Id.* at 2027. However, because *Santos* was a plurality

> opinion, the holding of the Court for precedential purposes is the narrowest holding that garnered five votes. *Marks v. United States*, 430 U.S. 188, 193, 97 S. Ct. 990, 51 L. Ed.2d 260 (1977). Here, Justice Stevens's concurrence provides the narrowest holding. *Santos*, 128 S. Ct. at 2031. Justive Stevens writes that the "profits" definition of "proceeds" is limited to money laundering cases involving a gambling operation like the one in that case. He explains that, "[i]n other applications of the statute not involving such a perverse result [as in this case], I would presume that the legislative history summarized by Justice Alito [that "proceeds" means "receipts"] reflects the intent of the enacting Congress." *Id.* at 2034 n.7. Justice Stevens thus carves out an exception for gambling operations in which "proceeds" means "profits," although the rule is that "proceeds" means "receipts."
>
> Because *Santos* does not establish a binding precedent that the term "proceeds" means "profits," except regarding an illegal gambling charge, we are bound by this Court's precedent establishing that "proceeds" means "receipts." *See, e.g., United States v. Singh*, 518 F.3d 236, 247 (4th Cir. 2008) (recognizing that funds used by prostitutes to pay the cost of a hotel room for purpose of prostitution constituted "proceeds"); *United States v. Caplinger*, 339 F.3d 226, 233 (4th Cir. 2003) (holding that the element of use of unlawful proceeds can be proven by circumstantial evidence that the defendant applied unlawful proceeds to promote and perpetuate his scheme); *United States v. Stewart*, 256 F.3d 231, 250 (4th Cir. 2001) (affirming a money-laundering conviction where proceeds from the sale of drugs were used to further the drug operation).

309 Fed. App'x at 771.

In reliance on the Fourth Circuit's prior cases which hold that "proceeds" means "receipts," and that the plurality holding in <u>Santos</u> is limited to gambling cases, the undersigned proposes that the presiding District Judge **FIND** that Defendant is not actually innocent of engaging in a conspiracy with Lois King to launder money which was the proceeds of drug trafficking.

10

It is respectfully **RECOMMENDED** that the Section 2255 motion be denied.

The parties are notified that this Proposed Findings and Recommendations is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have ten days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendations within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendations to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on the United States Attorney, Chief

Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendations and to mail a copy of the same to Defendant and to counsel of record.

| | |
|---|---|
| August 19, 2009<br>Date | *Mary E. Stanley*<br>Mary E. Stanley<br>United States Magistrate Judge |